IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| AGNES MUKANTAGARA, and EBENEZER SHYAKA,<br><br>    Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, ALEJANDRO MAYORKAS[1], Secretary; U.S. CITIZENSHIP AND IMMIGRATION SERVICES (USCIS), TRACY RENAUD[2], Senior Official performing the duties of the Director, DAVID DOUGLAS[3], District Director, District 32 (Denver), and KIN MA, Field Office Director, Salt Lake City,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Case No. 2:20-cv-00897-RJS-DAO<br><br>Chief Judge Robert J. Shelby<br><br>Magistrate Judge Daphne A. Oberg |

Plaintiffs Agnes Mukantagara and Ebenezer Shyaka bring this lawsuit seeking judicial review of the termination of their refugee status against Defendants, the United States Department of Homeland Security (DHS), DHS Secretary Alejandro Mayorkas, the United States Citizenship and Immigration Services (USCIS), USCIS Acting Director Tracy Renaud, USCIS District Office Director Andrew Lambrecht, and USCIS Field Office Director Kin Ma. Before the court is Defendants' Motion to Dismiss for lack of finality of the agency decision

---

[1] Mr. Mayorkas is substituted for Mr. Wolf pursuant to Fed. R. Civ P. 25(d).

[2] Ms. Renaud is substituted for Mr. Koumans pursuant to Fed. R. Civ P. 25(d).

[3] Mr. Douglas is substituted for Mr. Lambrecht pursuant to Fed. R. Civ P. 25(d).

1

under either Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6).[4] For the reasons set forth below, the Defendants' Motion is GRANTED.

## BACKGROUND[5]

Plaintiffs Mukantagara and Shyaka are citizens of Rwanda.[6] Mukantagara was admitted to the United States as a refugee on August 3, 2005.[7] As her minor child, Shyaka was granted derivative refugee status.[8] Mukantagara and Shyaka have lived in the United States since their refugee status was granted in 2005 and both are residents of Salt Lake City, Utah.[9] On November 27, 2006, Plaintiffs applied for Lawful Permanent Resident Status with USCIS.[10] Shyaka filed a second application on April 20, 2009, after Defendants failed to act on his first application.[11]

In early 2007, a woman Mukantagara previously met in Kenya asked her to testify at her asylum trial in Boston.[12] Mukantagara agreed but was not allowed to testify because her

---

[4] Dkt. 14, *Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Alternatively for Failure to State a Claim* (Motion to Dismiss).

[5] Because this case is before the court on a motion to dismiss either as a factual challenge to subject matter jurisdiction or for failure to state a claim, the following facts are drawn from two sources: the relevant jurisdictional facts are drawn from the parties' briefing on Defendants' Motion, and all facts not related to subject matter jurisdiction are drawn from the Complaint. *See Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) (recognizing under a 12(b)(1) factual challenge to subject matter jurisdiction, "a court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts" (internal quotation marks and citation omitted)); *see also Sinclair Wyoming Refining Co. v. A & B Builders, Ltd*, 989 F.3d 747, 765 (10th Cir. 2021) (recognizing under a 12(b)(6) motion the court will accept as true all well-pleaded factual allegations in the Complaint and will view them in the light most favorable to the nonmovant).

[6] Dkt. 2, *Complaint* ¶¶ 5, 6.

[7] *Id.* ¶ 84.

[8] *Id.*

[9] *Id.* ¶¶ 5–6, 84.

[10] *Id.* ¶ 85.

[11] *Id.*

[12] *Id.* ¶ 86.

background check did not clear.[13] Mukantagara alleges her background check did not clear because of false allegations concerning her involvement in the 1994 Rwandan genocide.[14] In April of 2007, Mukantagara traveled to Kenya on a valid Refugee Travel Document. When she returned, she was taken to secondary inspection, interviewed, and her refugee admission documents were confiscated.[15] After the inspection, she was allowed to travel to her home in Utah but was paroled for further inspection.[16]

Nine years later, on September 13, 2016, Defendant USCIS issued Mukantagara and her derivatives a Notice of Intent to Terminate Refugee Status.[17] The Notice alleged Mukantagara did not meet the definition of refugee at the time of admission.[18] Mukantagara timely responded to the Notice, denying the allegations.[19] On December 20, 2016, Defendants issued her a Notice to Terminate Refugee Status.[20] Because Defendants terminated Mukantagara's refugee status, Shyaka's derivative refugee status was also terminated.[21]

After terminating Plaintiffs' refugee statuses, USCIS initiated removal proceedings against both.[22] On August 28, 2018, the presiding Immigration Judge concluded as a matter of law that the administrative court lacked legal authority to review USCIS's action terminating Plaintiffs' refugee status.[23] The Immigration Judge concluded the administrative court could

---

[13] *Id.* ¶ 87.
[14] *See id.* ¶¶ 74, 88.
[15] *Id.* ¶¶ 89–91.
[16] *Id.* ¶¶ 91–92.
[17] *Id.* ¶ 125.
[18] *Id.* ¶ 126.
[19] *Id.* ¶ 130.
[20] *Id.* ¶ 135.
[21] *Id.* ¶ 136.
[22] *Id.* ¶ 140.
[23] *Id.* ¶ 141.

only decide the Plaintiffs' new applications for asylum.[24] In addressing Mukantagara's asylum application, the Immigration Judge "ultimately found significant reasons to doubt the genocide accusations against [Mukantagara]."[25] The Immigration Judge then granted Mukantagara's application for asylum but denied Shyaka's application.[26] The Immigration Judge concluded that because Shyaka was over the age of twenty-one, he was no longer eligible to be considered a derivative of his mother's asylum application.[27] Where he did not meet the definition of refugee for the purposes of his asylum application independently of his mother, the Immigration Judge denied his asylum application and ordered him removed to Rwanda.[28] Shyaka appealed the Immigration Judge's denial of his asylum application to the Board of Immigration Appeals (BIA).[29] The government in turn appealed the Immigration Judge's grant of Mukantagara's asylum application.[30] The BIA affirmed the Immigration Judge's determinations that Shyaka is ineligible for asylum, withholding of removal, or protection under the Convention Against Torture (CAT).[31] The BIA remanded Mukantagara's claims for the Immigration Judge to further evaluate her credibility in light of inconsistencies in the record and to reconsider his findings regarding her claims for asylum, withholding of removal, and protection under CAT.[32]

---

[24] *Id.* ¶ 142.

[25] *Id.* ¶ 143; *see also id.* Exhibit 8 (ILJ Decision) at 12.

[26] *Id.* ¶¶ 143, 145.

[27] *Id.* ¶ 144.

[28] *Id.* ¶¶ 144–45.

[29] *See* Dkt. 14 (Motion to Dismiss) at 2.

[30] *Id.*

[31] *See* Dkt. 24-2, *BIA Decision for Shyaka* at 3–4.

[32] *See* Dkt. 24-1, *BIA Decision for Mukantagara* at 4.

On December 21, 2020, Plaintiffs filed this lawsuit seeking judicial review of the termination of their refugee status.[33] Specifically, Plaintiffs contend Defendants failed to comply with procedures and notice requirements for agency adjudication under the Administrative Procedure Act (APA).[34] Plaintiffs also assert Defendants' revocation of their refugee statuses was arbitrary, capricious, an abuse of discretion, and not otherwise in accordance with law because the action was not supported by reliable, probative, and substantial evidence.[35] Plaintiffs contend not only do Defendants lack statutory authority to terminate refugee statuses, but the revocation violated Plaintiffs' due process rights.[36] Plaintiffs seek, among other relief, recission of the termination of their refugee statuses and an order requiring Defendants to provide them with an unredacted full record of the termination investigation and proceeding.[37]

Defendants filed the instant Motion to Dismiss on February 26, 2021.[38] They move to dismiss for two reasons. First, they contend the court lacks subject matter jurisdiction over the Plaintiffs' Complaint because the challenged agency action is not final.[39] Second, Defendants contend the action is barred by the jurisdiction-stripping provisions of the Immigration and Nationality Act (INA).[40] Plaintiffs disagree, arguing the termination of their refugee statuses is a final agency action and the INA does not bar their action.[41]

---

[33] *See* Dkt. 2, *Complaint*.

[34] *Id.* ¶¶ 149–56.

[35] *Id.* ¶¶ 157–62.

[36] *Id.* ¶¶ 163–76.

[37] *Id.* ¶ 177.

[38] Dkt. 14 (Motion to Dismiss).

[39] *Id.* at 4–5.

[40] *Id.* at 5–6.

[41] *See* Dkt. 15, *Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss* (Opposition).

The court received oral argument on the Motion on August 12, 2021.[42] After the hearing, the court ordered supplemental briefing on three questions related to subject matter jurisdiction.[43] Specifically, the court ordered Plaintiffs to answer the following questions: (1) why the court is not stripped of jurisdiction by certain provisions of the INA, as amended by the Real ID Act of 2005; (2) whether this case is ripe for judicial review; and (3) "what facts demonstrate that Plaintiff Agnes Mukantagara can establish the 'irreducible constitutional minimum' of standing to assert each claim in the Complaint?"[44]

For the reasons explained below, the court concludes it lacks subject matter jurisdiction over the action based on the relevant provisions of the INA. In light of this, the court will not address any other reason it may lack jurisdiction.[45]

## LEGAL STANDARD

Rule 12(b)(1) motions challenging subject matter jurisdiction generally take one of two forms: a facial attack or a factual attack.[46]

"[A] facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint."[47] "In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true."[48]

---

[42] *See* Dkt. 19, *Minute Entry for Proceedings*.

[43] Dkt. 18, *Order for Supplemental Briefing*.

[44] *Id.* at 2 (internal citations omitted).

[45] *See Ex parte McCardle*, 74 U.S. 506, 514 (1868) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998); *Guy v. Barnhart*, 62 F. App'x 848, 850 (10th Cir. 2003).

[46] *See Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001).

[47] *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995) (citations omitted).

[48] *Id.*

Under a factual attack, "a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends."[49]  "When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations."[50]  With this type of challenge, "[a] court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)."[51]  In this review, "a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion."[52]

Because "[f]ederal courts are courts of limited jurisdiction[,] they must have a statutory basis for their jurisdiction."[53]  Thus, "there is a presumption against . . . jurisdiction, and the party invoking federal jurisdiction bears the burden of proof."[54]

## ANALYSIS

Plaintiffs bring four claims challenging the legal and factual validity of USCIS's termination of their refugee statuses.[55]  Defendants contend this court lacks subject matter jurisdiction over each because of the jurisdiction-barring provisions contained in § 242 of the INA.[56]  The court agrees with Defendants.

---

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Id.* (citations omitted).

[53] *Dutcher v. Matheson*, 733 F.3d 980, 984 (10th Cir. 2013) (internal quotation marks and citation omitted).

[54] *See Quigley v. Sporting Kan. City Soccer Club*, 799 Fed. App'x 644, 645 (10th Cir. 2020) (unpublished) (quoting *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013)).

[55] *See* Dkt. 2, *Complaint*.

[56] Dkt. 14 (Motion to Dismiss) at 5–6; Dkt. 16, *Defendants' Reply Supporting Motion to Dismiss* (Reply) at 7.

Section 242 provides for judicial review of final orders of removal,[57] explaining that filing a petition "with an appropriate court of appeals" is "the sole and exclusive means for judicial review of an order of removal."[58] The INA, as amended by the REAL ID Act of 2005, channels for review by the appropriate courts of appeals:

> all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States[.][59]

This provision, 8 U.S.C. § 1252(b)(9), has been interpreted as a "general jurisdictional limitation" and "an unmistakable 'zipper' clause."[60] The Supreme Court has interpreted this provision to require all of "a noncitizen's various challenges arising from the removal proceeding . . . be consolidated in a petition for review and considered by the courts of appeals."[61] Consolidating these questions before the court of appeals "eliminat[es] review in the district courts, and . . . expedites judicial review of final orders of removal."[62] With this Section, "Congress plainly intended to put an end to the scattershot and piecemeal nature of the review process that previously had held sway in regard to removal proceedings."[63]

This Section applies when the court is presented with legal or factual questions "arising from" actions taken to remove a noncitizen.[64] Although the "expanse is breathtaking[,]" the

---

[57] 8 U.S.C. § 1252(a)(1).

[58] 8 U.S.C. § 1252(a)(5).

[59] *See* 8 U.S.C § 1252(b)(9); 8 U.S.C. § 1252(a)(5) (noting "petitions for review" filed with the courts of appeal are the "sole and exclusive means for judicial review from an order of removal.").

[60] *Aguilar v. U.S. Immigration and Customs Enforcement Div. of Dept. of Homeland Security*, 510 F.3d 1, 9 (1st Cir. 2007) (quoting *Reno v. Am.-Arab Anti-Discrim. Comm.*, 525 U.S. 471, 482–83 (1999)).

[61] *Nasrallah v. Barr*, 140 S.Ct. 1683, 1690 (2020) (quoting *INS v. St. Cyr*, 533 U.S. 289, 313 (2001)) (internal quotation marks omitted).

[62] *Id.*

[63] *Aguilar*, 510 F.3d at 9 (citation omitted).

[64] *Jennings v. Rodriguez*, 138 S.Ct. 830, 840 (2018).

words "arising from" are not all encompassing, nor do they "swallow all claims that might somehow touch upon, or be traced to, the government's efforts to remove an alien."[65]  This Section does not bar the district court from adjudicating "claims that are independent of, or wholly collateral to, the removal process."[66]  Instead, the Supreme Court has explained legal questions "aris[e] from" actions taken to remove a noncitizen where they challenge "an order of removal; . . . the decision to detain [the noncitizen] or to seek removal; and . . . any part of the process by which their removability will be determined."[67]

### I.   Plaintiffs' Claims Fall Within the Scope of § 1252(b)(9)

The claims presented here, based on USCIS's termination of Plaintiffs' refugee statuses, fall within the scope of § 1252(b)(9) because they challenge the decision "to seek removal."[68]  The decision to terminate a refugee status is a decision to seek removal because the regulation governing refugee status termination requires USCIS to initiate removal proceedings upon termination.[69]  The termination of a noncitizen's refugee status is governed by 8 C.F.R. § 207.9:

> The refugee status of any alien (and of the spouse or child of the alien) admitted to the United States under section 207 of the Act will be terminated by USCIS if the alien was not a refugee within the meaning of section 101(a)(42) of the Act at the time of admission . . . .  There is no appeal under this chapter I from the termination of refugee status by USCIS.  Upon termination of refugee status, USCIS *will* process the alien under sections 235, 240, and 241 of the Act.[70]

---

[65] *Aguilar*, 510 F.3d at 10.

[66] *Id.* at 11.

[67] *Jennings*, 138 S.Ct. at 841.

[68] *Id.*

[69] *See* 8 C.F.R. § 207.9.

[70] 8 C.F.R. § 207.9 (emphasis added).

Sections 235, 240, and 241 of the INA each describe various removal processes.[71] This means that when USCIS decides to terminate a noncitizen's refugee status, it must seek removal of the noncitizen.[72] Because the initiation of removal proceedings is mandatory, the decision to terminate a noncitizen's refugee status is inextricably linked to the decision "to seek removal[.]"[73] By challenging the decision to terminate their refugee statuses, Plaintiffs ask this court to decide "questions of law and fact . . . arising from an[] action taken . . . to remove an alien from the United States."[74] This court is barred by 8 U.S.C. § 1252(b)(9) from deciding those questions.

While acknowledging that USCIS is mandated to initiate removal proceedings upon terminating their refugee statuses, Plaintiffs argue the decision to terminate a refugee status does not "aris[e] from an[] action taken . . . to remove an alien[.]"[75] Plaintiffs contend the termination of their refugee statuses is "a completely independent decision by USCIS" not barred by § 1252(b)(9) because it is "one step back" from the decision to seek removal.[76] They contend this step "is a critical dividing line" in determining whether § 1252(b)(9) applies.[77] In other words, Plaintiffs argue USCIS's decision to terminate their refugee statuses is too attenuated from any decision to seek removal for their challenges to be barred by § 1252(b)(9). Plaintiffs cite two Supreme Court decisions to support this argument: *Jennings v. Rodriguez* and *Nasrallah*

---

[71] *See* 8 U.S.C. § 1225 (governing expedited removal of inadmissible arriving aliens); 8 U.S.C. § 1229a (governing removal proceedings); 8 U.S.C. § 1231 (governing detention and removal of aliens ordered removed).

[72] *See* 8 C.F.R. § 207.9.

[73] *See Jennings*, 138 S.Ct. at 841 (including challenges to the decision to seek removal as those covered by the jurisdictional provision of the INA, 8 U.S.C. § 1252(b)(9)).

[74] 8 U.S.C. § 1252(b)(9).

[75] *See* Dkt. 20, *Plaintiffs' Response to the Court's Order for Supplemental Briefing* (Plaintiffs' Supplemental Brief) at 1–2.

[76] *Id.* at 2–3.

[77] *Id.* at 2.

10

*v. Barr*.[78]  Defendants disagree and distinguish *Jennings* and *Nasrallah* from the instant matter as seeking review of issues that did not affect the validity of a final removal order—the plaintiffs' lengthy detention without a bond hearing and the BIA's Convention Against Torture ruling respectively.[79]  In contrast, Defendants argue, the validity of removal proceedings in this matter is directly predicated on termination of Mukantagara's refugee status. The court agrees with the Defendants.  Neither case supports retaining jurisdiction over Plaintiffs' action.

The question presented in *Jennings v. Rodriguez* was whether detained noncitizens have a right "to periodic bond hearings" under various sections of the INA.[80]  Before turning to the merits of that legal question, the Supreme Court addressed whether § 1252(b)(9) barred jurisdiction over the respondents' legal challenge to their detention.[81]  The Court concluded § 1252(b)(9) did not bar the respondents' challenge because the legal question presented by their detention did not "arise from the actions taken to remove" the noncitizens.[82]  This case is unavailing for Plaintiffs because the challenges to prolonged detention presented in *Jennings* were not "one step back" from an action taken to remove a noncitizen.  Instead, the challenges were so attenuated to any action taken to remove the respondents that "cramming judicial review of those questions into the review of final removal orders would be absurd."[83]

Plaintiffs' reliance on the application of § 1252(b)(9) in *Nasrallah v. Barr* is similarly unpersuasive.  There, the "narrow question before the Court" was whether § 1252(b)(9) limited

---

[78] *Id.* at 1–3 (referencing *Jennings v. Rodriguez*, 138 S.Ct. 830 (2018); *Nasrallah v. Barr*, 140 S.Ct. 1683 (2020)).

[79] Dkt. 23, *Defendants' Supplemental Brief in Response to the Court's Post-Hearing Order* (Defendants' Supplemental Brief) at 4–6.

[80] *See Jennings*, 138 S.Ct. at 840.

[81] *Id.* at 839.

[82] *Id.* at 840.

[83] *Id.*

11

the scope of judicial review for factual challenges to an order pursuant to the Convention Against Torture (CAT).[84] The court concluded it does not because "[a] CAT order is not itself a final order of removal" that is reviewed under § 1252.[85] This is because a CAT order does not resolve whether a noncitizen is removed, but rather determines to where the person may be removed.[86] Moreover, CAT orders do not merge into final orders of removal in the same way as an immigration judge's evidentiary rulings because "ruling[s] on a CAT claim do[] not affect the validity of the final order of removal."[87]

Plaintiffs contend that if rulings on CAT claims do not merge into final orders of removal under § 1252(b)(9) even where such rulings arise in the same removal process, USCIS's termination decision should also escape the jurisdictional bar because that decision came "one step" before any removal proceedings.[88] The conclusion in *Nasrallah*, however, did not depend on the proximity to removal proceedings. Rather, the court concluded CAT rulings do not merge into a final order of removal because they do not "affect the validity of the final order of deportation."[89] In contrast, the decisions USCIS made to terminate Plaintiffs' refugee statuses do affect the validity of the final order of deportation. That is, if USCIS erred in deciding Plaintiffs were not refugees at the time of admission, that error would affect the validity of any order of deportation. Plaintiffs' comparison with CAT orders is unhelpful.

Neither of the cases Plaintiffs cite provide an avenue for this court to retain jurisdiction over their challenge to USCIS's decision to terminate their refugee statuses where that decision

---

[84] *See Nasrallah*, 140 S.Ct. at 1688.

[85] *Id.* at 1691 (internal quotation marks omitted).

[86] *Id.* (citing 8 C.F.R. § 1208.17(b)(2), 1208.16(f)).

[87] *Id.*

[88] Dkt. 20 (Plaintiffs' Supplemental Brief) at 3.

[89] *Nasrallah*, 140 S.Ct. at 1691.

mandated the initiation of removal proceedings.[90]  Where the initiation and validity of removal proceedings is predicated on the decision to terminate Plaintiffs' refugee status, that decision can hardly be "independent of, or wholly collateral to, the removal process."[91]  Furthermore, reserving Plaintiffs' challenges presented in this lawsuit for review by the court of appeals "is consistent with Congress' clear intent to streamline the review process by consolidating and channeling review of all legal and factual questions that arise from the removal of an alien into the administrative process, with judicial review of those decisions vested exclusively in the courts of appeals."[92]

## II.     Plaintiffs are Not Foreclosed from Meaningful Review of Their Claims

Plaintiffs next contend that any review by the court of appeals pursuant to 8 U.S.C. § 1252(b)(9) is an inadequate "alternative to APA review of USCIS's decision" because any such review will be limited to the record developed by the Immigration Judge and BIA.[93]  Where neither enjoy jurisdiction to review USCIS's decision to terminate their refugee status,[94] Plaintiffs contend the challenged decision will never be part of the record for the court of appeals to review.[95]

At least one other court presented with this argument disagreed that review upon petition to the appropriate court of appeals is so limited.[96]  Instead, noncitizens "may seek review of

---

[90] *See* 8 C.F.R. § 207.9.

[91] *Aguilar*, 510 F.3d at 11.  *See, e.g., Id.* at 13–14 (holding claims based upon deprivation of rights to counsel in connection to removal proceedings "possess[] a direct link to, and [are] inextricably intertwined with, the administrative process that Congress so painstakingly fashioned.").

[92] *Jama v. Dep't of Homeland Sec.*, 760 F.3d 490, 496 (6th Cir. 2014) (internal quotations, brackets, and citations omitted).

[93] Dkt. 20 (Plaintiffs' Supplemental Brief) at 7.

[94] 8 C.F.R. § 207.9 ("There is no appeal under this chapter I from the termination of refugee status by USCIS.").

[95] Dkt. 20 (Plaintiffs' Supplemental Brief) at 5.

[96] *See Jama*, 760 F.3d at 497.

13

intermediate agency actions, including the termination of [] refugee status . . . in the United States Court of Appeals."[97] This review includes factual and legal challenges to USCIS's original termination decision even where "neither the [Immigration Judge] nor the BIA has authority to review USCIS's decision to terminate [refugee status][.]"[98] Here, "if the BIA upholds the final order of removal, the ex-[refugee] may then appeal to the appropriate circuit court to review 'constitutional claims or questions of law' underlying the final order of removal, including direct challenges to USCIS's original decision."[99] This means, "[a]t the conclusion of the removal proceedings, Plaintiffs can challenge both the outcome of those proceedings as well as USCIS's actions in a petition for review."[100] Plaintiffs do not provide any reason the appropriate court of appeals will not be able to supplement the record to include USCIS's initial termination. Nor have they provided this court with any authority to suggest it is uniquely positioned to supplement the record that would later appear before the court of appeals.

For these reasons, the court concludes jurisdiction is limited exclusively to the court of appeals to hear Plaintiffs' challenges to USCIS's termination of their refugee statuses pursuant to 8 U.S.C. § 1252(b)(9) because those challenges "aris[e] from an[] action taken . . . to remove an alien from the United States."[101]

## CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction[102] is GRANTED. The clerk of court is directed to close the case.

---

[97] *Id.*

[98] *Id.* (quoting *Qureshi v. Holder*, 663 F.3d 778, 780 (5th Cir. 2011)).

[99] *Id.* (quoting *Qureshi*, 663 F.3d at 780).

[100] *Id.*

[101] *See* 8 U.S.C. § 1252(b)(9).

[102] Dkt. 14.

SO ORDERED this 2nd day of December 2021.

BY THE COURT:

_____
ROBERT J. SHELBY
United States Chief District Judge