IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| AGNES MUKANTAGARA, and EBENEZER SHYAKA,<br><br>   Plaintiffs,<br><br>v.<br><br>ALEJANDRO MAYORKAS, Secretary, United States Department of Homeland Security, *et al.*<br><br>   Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Case No. 2:20-cv-00897-RJS-DAO<br><br>Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Daphne A. Oberg |

  Plaintiffs Agnes Mukantagara and Ebenezer Shyaka bring this lawsuit seeking judicial review of Defendants' decision to terminate their refugee and derivative refugee statuses. Before the court is Defendants' Motion to Dismiss either for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or for failure to state a claim upon which relief can be granted under 12(b)(6).[1] For the reasons set forth below, Defendants' Motion is GRANTED.

### BACKGROUND[2]

  Plaintiffs Mukantagara and Shyaka are citizens of Rwanda.[3] In 2005, Mukantagara was admitted to the United States as a refugee and Shyaka, as her minor child, was granted derivative refugee status.[4] Mukantagara and Shyaka have lived in the United States ever since and both are

---

[1] Dkt. 46, *Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim and Motion to Stay Proceedings*.

[2] At the motion to dismiss stage, the court accepts as true all well-pleaded factual allegations in the complaint and views them in the light most favorable to the nonmoving party. *See Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty.*, 771 F.3d 697, 700 (10th Cir. 2014). The following facts are drawn from Plaintiffs' Complaint. Dkt. 2, *Complaint*.

[3] Dkt. 2 ¶¶ 5, 6.

[4] *Id.* ¶ 84.

1

residents of Salt Lake City, Utah.[5] On November 27, 2006, Plaintiffs applied for Lawful Permanent Resident Status with United States Citizenship and Immigration Services (USCIS).[6]

In early 2007, a woman asked Mukantagara to testify at her asylum trial in Boston.[7] Mukantagara agreed but was not allowed to testify because her background check did not clear.[8] Mukantagara alleges her background check did not clear because of false allegations concerning her involvement in the 1994 Rwandan genocide.[9] In April 2007, Mukantagara traveled to Kenya on a valid Refugee Travel Document.[10] When she returned, she was taken to secondary inspection, interviewed, and her refugee admission documents were confiscated.[11] After the inspection, she was allowed to travel to her home in Utah but was paroled for further inspection.[12]

Mukantagara alleges the office of Homeland Security Investigations sent two investigators to Rwanda in August of 2008.[13] There, they interviewed a number of individuals whose names have not been provided to Plaintiffs.[14] Some of these individuals claimed to have seen Mukantagara's participation in the 1994 Rwandan genocide.[15] Much of the information

---

[5] *Id.* ¶¶ 5–6, 84.

[6] *Id.* ¶ 85. Shyaka filed a second application on April 20, 2009, after Defendants failed to act on his first application. *Id.*

[7] *Id.* ¶ 86.

[8] *Id.* ¶ 87.

[9] *See id.* ¶¶ 74, 88.

[10] *Id.* ¶ 89.

[11] *Id.* ¶¶ 90–91.

[12] *Id.* ¶¶ 91–92.

[13] *Id.* ¶ 93.

[14] *See id.* ¶¶ 94–95, 99.

[15] *Id.* ¶ 95.

provided to the investigators was facilitated by an organization called African Rights, which has been accused of pursuing an ideological and political agenda.[16]

USCIS waited eight more years to act on Plaintiffs' applications for Lawful Permanent Resident status. On September 13, 2016, USCIS issued Mukantagara and her derivatives a Notice of Intent to Terminate Refugee Status.[17] The Notice alleged Mukantagara did not meet the definition of refugee at the time of her admission to the U.S.[18] Mukantagara timely responded to the Notice, denying the allegations.[19] On December 20, 2016, Defendants issued her a Notice to Terminate Refugee Status.[20] Because Defendants terminated Mukantagara's refugee status, Shyaka's derivative refugee status was also terminated.[21]

After terminating Plaintiffs' refugee statuses, USCIS initiated removal proceedings against both.[22] On August 28, 2018, as part of removal proceedings, the presiding Immigration Judge concluded as a matter of law the administrative court lacked legal authority to review USCIS's action terminating Plaintiffs' refugee status.[23] The Immigration Judge concluded the administrative court could only decide Plaintiffs' new applications for asylum.[24] In addressing Mukantagara's asylum application, the Immigration Judge "ultimately found significant reasons to doubt the genocide accusations against [Mukantagara]."[25] The Immigration Judge then

---

[16] *Id.* ¶¶ 96–102.
[17] *Id.* ¶¶ 103, 125.
[18] *Id.* ¶ 126.
[19] *Id.* ¶ 130.
[20] *Id.* ¶ 135.
[21] *Id.* ¶ 136.
[22] *Id.* ¶ 140.
[23] *Id.* ¶ 141.
[24] *Id.* ¶ 142.
[25] *Id.* ¶ 143; *see also id.* Exhibit 8: ILJ Decision at 12.

granted Mukantagara's application for asylum but denied Shyaka's application.[26] The Immigration Judge concluded because Shyaka was over the age of twenty-one, he was no longer eligible to be considered a derivative of his mother's asylum application.[27] Independent of his mother, he did not meet the definition of refugee.[28] The Immigration Judge denied his asylum application and ordered him removed to Rwanda.[29]

Shyaka appealed the Immigration Judge's denial of his asylum application to the Board of Immigration Appeals (BIA).[30] Likewise, the government appealed the Immigration Judge's grant of Mukantagara's asylum application.[31] The BIA affirmed the Immigration Judge's determinations that Shyaka was ineligible for asylum and remanded Mukantagara's claims for the Immigration Judge to further evaluate her credibility and to reconsider his findings.[32] On remand, the Immigration Judge reaffirmed Mukantagara's asylum application.[33] The government again appealed the Immigration Judge's decision to the BIA.[34] That appeal remains pending.[35]

On December 21, 2020, Plaintiffs filed this lawsuit seeking judicial review of the USCIS's decision to terminate their refugee status.[36] Plaintiffs first contend Defendants failed to comply with procedures and notice requirements for agency adjudication under the

---

[26] *Id.* ¶¶ 143, 145.

[27] *Id.* ¶ 144.

[28] *Id.* ¶¶ 144–45.

[29] *Id.*

[30] *See* Dkt. 46 at 3.

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *See* Dkt. 2.

4

Administrative Procedure Act (APA).[37] Plaintiffs next assert Defendants' revocation of their refugee statuses was arbitrary, capricious, an abuse of discretion, and not otherwise in accordance with law because the action was not supported by reliable, probative, and substantial evidence.[38] Finally, Plaintiffs contend Defendants lack statutory authority to terminate refugee statuses, and the revocation violated Plaintiffs' due process rights.[39] Plaintiffs seek, among other relief, recission of the termination of their refugee statuses and an order requiring Defendants to provide them with an unredacted full record underlying USCIS's decision to terminate their status.[40]

On February 26, 2021, Defendants filed their first Motion to Dismiss.[41] This court dismissed the case for lack of jurisdiction pursuant to 8 U.S.C. § 1252(b)(9).[42] Under § 1252(b)(9), a noncitizen raising a legal challenge "arising from any [government] action taken or proceeding brought to remove an alien from the United States" must do so in a court of appeals, not a district court.[43] Because this court held USCIS's decision to terminate Plaintiffs' refugee status was also a decision to seek Plaintiffs' removal, it concluded it lacked jurisdiction to consider Plaintiffs' claims.[44] The Tenth Circuit reversed, finding § 1252(b)(9) did not bar this court's review of USCIS's decision.[45] It concluded "[a] claim only arises from a removal

---

[37] *Id.* ¶¶ 149–56.

[38] *Id.* ¶¶ 157–62.

[39] *Id.* ¶¶ 163–76.

[40] *Id.* ¶ 177.

[41] Dkt. 14, *Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Alternatively for Failure to State a Claim*.

[42] Dkt. 25, *Memorandum Decision and Order* at 14.

[43] *Id.* at 8.

[44] *Id.* at 9–10.

[45] Dkt. 36, *Mandate* at 7.

5

proceeding when the parties in fact are challenging removal proceedings."[46] Because Plaintiffs are challenging the termination of their refugee status, not their removal proceedings, "'the zipper clause's channeling function has no role to play' and it does not bar Plaintiffs' challenge."[47]

Defendants filed the instant Motion to Dismiss on October 12, 2023.[48] They move to dismiss for three reasons. First, they contend the jurisdiction-stripping provisions of the Immigration and Nationality Act (INA)—specifically, by 8 U.S.C. § 1252(a)(2)(B)(ii)—bars judicial review.[49] Second, they argue the APA does not allow judicial review because Plaintiffs challenge a discretionary agency decision and the challenged agency action is not final.[50] Finally, they argue that, if the court determines it has jurisdiction, the court should dismiss Plaintiffs' first, third, and fourth causes of action for failure to state a claim upon which relief can be granted.[51] Plaintiffs disagree, arguing most of Defendants' arguments are barred by the "law of the case" doctrine.[52] To the extent they are not barred, Plaintiffs argue Defendants misread the applicable statutes and the Complaint adequately states claims for relief.[53] The court received oral argument on the Motion on April 25, 2024.[54]

---

[46] *Id.*

[47] *Id.*

[48] Dkt. 46.

[49] *Id.* at 6–10.

[50] *Id.* at 10–15.

[51] *Id.* at 15–19.

[52] Dkt. 49, *Plantiffs' Memorandum in Opposition to Defendants' Second 12(b)(6) and 12(b)(1) Motion to Dismiss* at 1–12.

[53] *Id.* at 4–22.

[54] Dkt. 59, *Minute Entry*.

**LEGAL STANDARD**

Rule 12(b)(1) motions challenging subject matter jurisdiction generally take one of two forms: a facial attack or a factual attack.[55] Here, "Defendants challenge the sufficiency of Plaintiffs' Complaint on its face because statutory bars preclude this [c]ourt from exercising jurisdiction over Plaintiffs' Complaint."[56] "[A] facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint."[57] "In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true."[58]

"Federal courts are courts of limited jurisdiction," with only the powers authorized to them by the Constitution and by statute.[59] Accordingly, this court is instructed to presume cases lie outside its limited jurisdiction, and "the burden of establishing the contrary rests upon the party asserting jurisdiction."[60] "A court lacking jurisdiction cannot render judgment but must dismiss the cause *at any stage* of the proceedings in which it becomes apparent that jurisdiction is lacking."[61]

**ANALYSIS**

Defendants argue this case must be dismissed because: (1) the law of the case doctrine does not apply and (2) 8 U.S.C. § 1252(a)(2)(B)(ii) strips the court of subject matter jurisdiction

---

[55] *See Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001).

[56] Dkt. 46 at 6.

[57] *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995) (citations omitted).

[58] *Id.*

[59] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *see also Dutcher v. Matheson*, 733 F.3d 980, 984 (10th Cir. 2013).

[60] *Kokkonen*, 511 U.S. at 377 (citations omitted); *see also Quigley v. Sporting Kan. City Soccer Club*, 799 F. App'x 644, 645 (10th Cir. 2020); *Citizens for a Better Env't*, 523 U.S. at 104.

[61] *Marcus v. Kan. Dep't of Revenue*, 170 F.3d 1305, 1309 (10th Cir. 1999) (emphasis in original) (quoting *Basso v. Utah Power & Light Co.*, 492 F.2d 906, 909 (10th Cir. 1974)).

to review discretionary decisions, including the termination of refugee status.[62] The court agrees and grants the Motion to Dismiss. In light of this conclusion, the court will not address any other reason it may lack jurisdiction.[63]

## I. The Law of the Case Doctrine Does Not Bar Defendants' Arguments.

To begin, the court evaluates whether the law of the case doctrine bars any of Defendants' arguments. The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."[64] "The doctrine does not apply when: (1) substantially different, new evidence has been introduced; (2) later, contradictory controlling authority exists; or (3) the original order is clearly erroneous."[65] This doctrine applies whether an issue is explicitly or implicitly decided. An issue is implicitly resolved in three circumstances:

> (1) resolution of the issue was a necessary step in resolving the earlier appeal; (2) resolution of the issue would abrogate the prior decision and so must have been considered in the prior appeal; and (3) the issue is so closely related to the earlier appeal its resolution involves no additional consideration and so might have been resolved but unstated.[66]

Plaintiffs argue "Defendants' second Motion to Dismiss rehashes multiple arguments that were previously thoroughly considered and reviewed by this [c]ourt, and again on appeal, by the Tenth Circuit Court of Appeals."[67] And no new evidence has been introduced or no new

---

[62] *See* Dkt. 46 at 6–10.

[63] *See Ex parte McCardle*, 74 U.S. 506, 514 (1868) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998); *Guy v. Barnhart*, 62 F. App'x 848, 850 (10th Cir. 2003).

[64] *Arizona v. California*, 460 U.S. 605, 618 (1983).

[65] *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1099 (10th Cir. 2017) (citations omitted).

[66] *Dobbs v. Anthem Blue Cross Blue Shield*, 600 F.3d 1275, 1280 (10th Cir. 2010) (quoting *McIlravy v. Kerr-McGee Coal Corp.*, 204 F.3d 1031, 1036 (10th Cir. 2000)).

[67] Dkt. 49 at 1.

Complaint has been filed.[68] Thus, Plaintiffs conclude, the question of whether the USCIS's decision was discretionary, the question of whether USCIS's termination decision is final, and the question of whether Plaintiffs have sufficiently alleged a property interest have already been argued and addressed.[69]

While these arguments were previously made by the parties, neither this court nor the Tenth Circuit decided the issues. Instead, both courts addressed only the narrow issue of whether 8 U.S.C. § 1252(b)(9) strips district courts of jurisdiction to review USCIS's decision to terminate Plaintiffs' refugee status. Both courts explicitly declined to expand their review beyond this narrow issue. This court stated it "w[ould] not address any other reason it may lack jurisdiction," and did not consider Defendants' APA arguments or their 12(b)(6) counterarguments.[70] Likewise, the Tenth Circuit declined to review Plaintiffs' arguments "that no other provision bars Plaintiff's Administrative Procedure Act claims," concluding "[it] need not reach these arguments given [its] reversal of the district court's subject matter jurisdiction ruling."[71]

Plaintiffs argue the Tenth Circuit decision should be read to apply to § 1252 more broadly. In their oral argument, they point specifically to the Tenth Circuit's usage of "statute" throughout its opinion to argue that the Tenth Circuit was not addressing § 1252(b)(9) specifically, but § 1252 more broadly.[72] However, this ignores the context of the decision. The paragraph highlighted by Plaintiffs in oral argument begins, "We cannot accept the district

---

[68] *Id.*

[69] *Id.* at 2–3.

[70] Dkt. 25 at 6.

[71] Dkt. 36 at 5 n.3.

[72] *Minute Entry*; *see also* Dkt. 36 at 7 ("Indeed, the lack of USCIS's discretion to commence proceedings does not bring its prior status termination within the statute.").

court's expansive interpretation of § 1252(b)(9)."[73] The very next sentence uses "statute," but is referring to § 1252(b)(9) only because it discusses Congress's intent that the zipper clause be "narrow" and not "cut off claims."[74] By its use of "statute," the Tenth Circuit was discussing only the narrow question of whether § 1252(b)(9) applies, not whether § 1252 broadly applies.

In the current Motion to Dismiss, Defendants no longer rely on 8 U.S.C. § 1252(b)(9) and Defendants never previously argued 8 U.S.C. § 1252(a)(2)(B)(ii) bars jurisdiction. Neither the undersigned nor the Tenth Circuit considered the issue presented here. The case of the law doctrine does not bar Defendants' arguments.

**II.    Section 1252(a)(2)(B)(ii) Strips the District Court of Jurisdiction.**

Plaintiffs bring this challenge under the APA which "confers a general cause of action upon persons 'adversely affected or aggrieved by agency action within the meaning of a relevant statute.'"[75] However, the APA "withdraws that cause of action"[76] when (1) the relevant "statute[] preclude[s] judicial review; or (2) agency action is committed to agency discretion by law."[77]

   **a.    The relevant statute—8 U.S.C. § 1252(a)(2)(B)(ii)—precludes judicial review.**

Section 1252(a)(2)(B)(ii) precludes judicial review of discretionary immigration decisions and actions:

> Notwithstanding any other provision of law . . . and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of

---

[73] Dkt. 36 at 6.

[74] *Id.* (citations omitted).

[75] *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984) (quoting 5 U.S.C. § 702).

[76] *Id.*

[77] 5 U.S.C. § 701(a).

> Homeland Security, other than the granting of relief under section 1158(a) of this title.[78]

Defendants argue the statute providing USCIS with the authority to terminate refugee status—8 U.S.C. § 1157(c)(4)—is the type of discretionary decision contemplated by § 1252(a)(2)(B)(ii). Section 1157(c)(4) reads:

> The refugee status of any alien (and of the spouse or child of the alien) may be terminated by the Attorney General pursuant to such regulations as the Attorney General may prescribe if the Attorney General determines that the alien was not in fact a refugee within the meaning of section 1011(a)(42) of this title at the time of the alien's admission.[79]

The court begins its jurisdiction analysis by acknowledging the general "presumption favoring interpretations of statutes [to] allow judicial review of administrative action."[80] This general presumption "may be overcome by specific language or specific legislative history that is a reliable indicator of congressional intent."[81] Section 1252(a)(2)(B)(ii) contains a clear congressional directive stripping courts of jurisdiction to review certain discretionary decisions.

The next step is to determine whether the authority specified in § 1157(c)(4) is such a discretionary decision. Defendants point to three key conditional terms indicating the termination decision is discretionary: "may be terminated," "may prescribe," and "if the Attorney General determines."[82] The court agrees the statue employs conditional terms that are "indicative of administrative discretion."[83] In particular, "the use of the word 'may' creates a

---

[78] 8 U.S.C. § 1252(a)(2)(B)(ii).

[79] *Id.* § 1157(c)(4).

[80] *Kucana v. Holder*, 558 U.S. 233, 237 (2010). The court was unable to find any case addressing whether district court review of USCIS's termination decisions is prohibited by § 1252(a)(2)(B)(ii).

[81] *Block*, 467 U.S. at 349.

[82] Dkt. 46 at 8.

[83] *Green v. Napolitano*, 627 F.3d 1341, 1345 (10th Cir. 2010) (quoting *Hamilton v. Gonzales*, 485 F.3d 564, 567 n.6 (10th Cir. 2007)).

11

presumption of discretion under normal rules of statutory interpretation," in contrast with the mandatory "shall."[84]

Though § 1252(a)(2)(B) applies only where discretion is "specified," a provision need not use the words "discretion" or "discretionary" to specify the decision is within the discretion of the Attorney General.[85] Indeed, the structure of § 1252(a)(2)(B)(ii) makes this clear. The court is required to interpret the provision in a way that gives all words meaning.[86] While § 1252(a)(2)(B)(ii) generally excludes judicial review of discretionary decisions, it specifically allows judicial review of discretionary decisions made under § 1158(a).[87] This exclusion would be superfluous if the words "discretion" or "discretionary" were mandatory, because § 1158(a) contains only the conditional "may."[88]

Thus, the court concludes the decision to terminate refugee status under § 1157(c)(4) is a discretionary decision and the court does not have jurisdiction to review.

### b. Plaintiffs' counterarguments do not change the court's analysis of § 1252(a)(2)(B)(ii).

Plaintiffs argue § 1157(c) is discretionary because it requires a determination that a noncitizen was "not in fact" a refugee. According to Plaintiffs, this provides a meaningful legal standard under *Heckler v. Chaney*, allowing the court to review USCIS's discretionary decision.[89] In so advocating, Plaintiffs apply to § 1252(a)(2)(B)(ii) the analysis courts use under

---

[84] *Zhu v. I.N.S.*, 300 F. Supp. 2d 77, 81 (D.D.C. 2004) (citing *Haig v. Agee*, 453 U.S. 280, 294 n.26 (1981); *Int'l Union v. Dole*, 919 F.2d 753, 756 (D.C. Cir. 1990); *Ramey v. Block*, 738 F.2d 756, 760 (6th Cir. 1984)); *see also Lopez v. Davis*, 531 U.S. 230, 241 (2000).

[85] *Zhu v. Gonzales*, 411 F.3d 292, 295 (D.C. Cir. 2005).

[86] *United States v. Menasche*, 348 U.S. 528 (1955) ("It is our duty to give effect, if possible, to every clause and word of a statute . . . .") (internal quotation marks and citation omitted).

[87] *See* 8 U.S.C. § 1252(a)(2)(B)(ii) (". . . other than the granting of relief under section 1158(a) of this title.").

[88] *See Kucana*, 558 U.S. at 247, n.13; *Flores v. Garland*, 72 F.4th 85, 91 (5th Cir. 2023); *Zhu*, 411 F.3d at 295.

[89] Dkt. 49 at 5–6.

§ 701(a)(2) to determine whether a decision is "discretionary." However, the Tenth Circuit and the Supreme Court have never applied a *Chaney*-like standard to § 1252(a)(2)(B)(ii), nor do Plaintiffs cite a case where *Chaney* has been applied to § 1252(a)(2)(B)(ii).[90]

In *Chaney*, the Supreme Court was balancing two seemingly contradictory provisions of the APA: § 701(a)(2)—prohibiting review of "agency action [] committed to agency discretion by law"—with § 706(2)(A)—allowing courts to review for "abuse of discretion."[91] The Court determined "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion. In such a case the statute ('law') can be taken to have 'committed' the decisionmaking to the agency's judgment absolutely."[92] If the statute does provide a standard, the courts may review for abuse of discretion under the APA.[93] However, no such conflict between "discretion" and "abuse of discretion" exists for § 1252(a)(2)(B)(ii) that would require the court to expand *Chaney*'s reasoning to this context.

Plaintiffs argue tension exists between the discretion provided in § 1157(c)(4), where USCIS "may terminate," and the implementing regulation USCIS wrote and follows, which uses the mandatory "will."[94] In other words, Plaintiffs contend USCIS's own regulations have effectively removed its discretion, rendering § 1252(a)(2)(B)(ii) no longer applicable. However, Plaintiffs provide no reason why the regulation should overwrite the plain language of the

---

[90] *See generally id.* at 4–6, 10–12. At oral argument, Plaintiffs were asked if they were aware of a case where the court applied *Chaney* to § 1252(a)(2)(B)(ii). They replied they were not. Dkt. 59.

[91] *See Heckler v. Chaney*, 470 U.S. 821, 829 (1985) ("How is it, they ask, that an action committed to agency discretion can be unreviewable and yet courts still can review agency actions for abuse of that discretion?").

[92] *Id.* at 830.

[93] *Id.*

[94] *Minute Entry; compare* 8 U.S.C. § 1157(c)(4) ("The refugee status of any alien . . . may be terminated . . . .") *with* 8 C.F.R. § 207.9 ("The refugee status of any alien . . . will be terminated . . . .").

statute. The statutory language must control the court's evaluation, not the regulation's language. Additionally, § 1157(c)(4) provides USCIS with discretion to write its regulations as it wishes: "pursuant to such regulations as the Attorney General may prescribe."[95] Though the agency chose to use its discretion to write a mandatory regulation, it does not change the fact that the statute enacted by Congress itself makes the termination decision discretionary.

Plaintiffs further contend no provision of 8 U.S.C. § 1252 can bar this court's review because "[t]he entire section 1252 of the Immigration and Nationality Act is explicitly directed at judicial review of *final orders of removal*," as evidenced by the title of the section—"Judicial review of orders of removal."[96] On appeal, the Tenth Circuit concluded Plaintiffs here do not challenge their removal proceedings, but rather the termination of their refugee and derivative refugee statuses.[97] Therefore, "[w]here Plaintiffs are not challenging *any aspect* of removal proceedings against them, nothing in § 1252 bars or restricts the review they are seeking."[98] However, the statutory text of § 1252(a)(2)(B)(ii) and Tenth Circuit precedent undermine Plaintiffs' assertion. Section 1252(a)(2)(B)(ii) applies "regardless of whether the judgment, decision, or action is made in removal proceedings."[99] The section's title cannot override the plain meaning of the statutory text, which makes clear its scope is broader than removal proceedings alone.[100] Additionally, the Tenth Circuit has previously concluded

---

[95] 8 U.S.C. § 1157(c)(4).

[96] Dkt. 49 at 8–9 (emphasis in original).

[97] *Id.* at 9.

[98] *Id.* at 9 (emphasis in original).

[99] 8 U.S.C. § 1252(a)(2)(B).

[100] *See Dubin v. United States*, 599 U.S. 110, 120–21 (2023) (citations omitted).

14

"[§] 1252(a)(2)(B) strips jurisdiction over decisions committed to agency discretion regardless of whether the decision is made in the removal process."[101]  Though not a removal proceeding, Plaintiffs' challenge of USCIS's discretionary decision to terminate refugee status is still barred by § 1252(a)(2)(B).

Plaintiffs' final argument avers § 1252(a)(2)(B) applies only to judicial review of denials of discretionary relief, not to judicial review of terminations of previously approved relief.[102]  In other words, Plaintiffs urge the court to recognize a meaningful distinction between the grant of an immigration benefit and the termination of a granted benefit.[103]  However, it is not clear why the termination of a granted benefit—which denies the noncitizen access to discretionary relief— would not fall within the broader category of "denials of discretionary relief."  Additionally, Plaintiffs' distinction is not supported by Tenth Circuit precedent.  In *Green v. Napolitano*, the Tenth Circuit held § 1252(a)(2)(B)(ii) barred judicial review of a discretionary decision to terminate a previously approved petition.[104]  Similarly, in *Hamilton v. Gonzales*, the Tenth Circuit held § 1252(a)(2)(B)(ii) barred judicial review of a discretionary decision to revoke a previously approved visa.[105]  Here, USCIS has made a discretionary decision to terminate a previously approved refugee application.

In sum, the court concludes § 1252(a)(2)(B)(ii) precludes district court review of the USCIS's discretionary decision under § 1157(c)(4) to terminate Plaintiffs' refugee and derivative

---

[101] *See Hamilton*, 485 F.3d at 567 ("Section 1252(a)(2)(B) strips jurisdiction over decisions committed to agency discretion regardless of whether the decision is made in the removal process.").

[102] Dkt. 49 at 10.

[103] *Id.*

[104] *Green*, 627 F.3d at 1345–46.

[105] *Hamilton*, 485 F.3d at 567–68 ("[S]ince a visa revocation is a discretionary act, our jurisdiction to review it is precluded by the plain meaning of § 1252(a)(2)(B) . . . .").

15

refugee status. Since the court does not have subject matter jurisdiction, the case must be dismissed.

### III. Review of Plaintiffs' Claims

Plaintiffs assert that, if the court dismisses their action, they will be foreclosed from any meaningful review of their claims.[106] However, review is provided via 8 U.S.C. § 1252(a)(2)(D):

> Nothing in subparagraph (B) . . . shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.[107]

In their Complaint, Plaintiffs advance questions of law and constitutional claims which are reviewable by the Tenth Circuit.[108]

There is limited Tenth Circuit precedent addressing when § 1252(a)(2)(D) review becomes available. Indeed, the court found only one Tenth circuit case—*Hamilton v. Gonzales*—that discussed the availability of review under § 1252(a)(2)(D) when a plaintiff challenges a discretionary decision not tied to a removal. There, the plaintiff challenged the revocation of a visa, but the Tenth Circuit determined § 1252(a)(2)(D) only provides appellate jurisdiction after a final order of removal.[109] Because § 1252(a)(2)(D)'s text states the review must be "in accordance with this section" and another provision of the section—§ 1252(a)(1)—limits circuit court review to final orders of removal, "such an order is a predicate to [the court of

---

[106] *See generally* Dkt. 49 at 7–8.

[107] 8 U.S.C. § 1252(a)(2)(D).

[108] *See generally* Dkt. 2. Specifically, Plaintiffs allege USCIS does not have the statutory authority to terminate refugee status, a question of law based on the proper interpretation of § 1157(c)(4). *Id.* at 26. Additionally, Plaintiffs' argument that § 1157(c)(4) creates a legal standard for reviewing USCIS's determination is a mixed question of law and fact, and the Supreme Court recently held these mixed questions are reviewable by a circuit court under § 1252(a)(2)(D). *Wilkinson v. Garland*, 601 U.S. 209, 212 (2024). Finally, Plaintiffs' alleged procedural due process violations are constitutional claims reviewable under this provision. Dkt. 2 at 26–28.

[109] *Hamilton*, 485 F.3d at 566.

appeal's] authority to review constitutional claims or questions of law stemming from the agency act at issue."[110] The court was not persuaded that the broad language of § 1252(a)(2)(B), which states it applies "regardless of whether the judgment, decision, or action is made in removal proceedings," meant review of the visa revocation was available prior to removal proceedings.[111] "[S]ince a visa revocation decision is a discretionary act, our jurisdiction to review it is precluded by the plain meaning of § 1252(a)(2)(B) except when (1) the decision implicates constitutional or legal questions, and (2) there is a final order of removal."[112] Finally, the court reviewed the legislative history to conclude Congress intended § 1252(a)(2)(D) review to become effective upon the appeal of a final order of removal.[113]

*Hamilton*, applied here, would preclude review of Plaintiffs' challenges to USCIS's termination decision until a final order of removal is entered. However, this is a timing requirement—not an absolute bar to review. The challenge is available but cannot be undertaken until the removal proceedings are complete, similar to how a court does not have jurisdiction to review an administrative action until all administrative remedies have been exhausted. Circuit precedent precludes review of the termination decision until the removal proceedings are complete.

However, herein lies the conundrum animating Plaintiffs' lawsuit: if the BIA does not overturn the Immigration Judge's finding, Plaintiff Mukantagara will receive asylum and will never have a final order of removal. In contrast, her son, Plaintiff Shyaka, does not qualify for

---

[110] *Id.* at 567.

[111] *Id.* at 567–68.

[112] *Id.* at 568 (citing *Schroeck v. Gonzales*, 429 F.3d at 951).

[113] *Id.*

17

asylum on his own and will receive a final order of removal. He can request Tenth Circuit review both under § 1252(a)(2)(D), to challenge the termination of refugee status, and under § 1252(b)(9), to challenge the final order of removal. However, because Shyaka's refugee status was terminated based on his derivative status, it may impact his ability to bring legal and constitutional claims challenging USCIS's decision. For example, it is not immediately apparent whether he has standing to bring procedural due process challenges or to advance questions of law that are grounded in the revocation of his mother's status. It is also not apparent that the record of USCIS's decision would be available to the Tenth Circuit to evaluate mixed questions of law and fact, because § 1252(b)(4)(A) constrains the record on appeal to solely "the administrative record on which the order of removal is based."[114]

       The court acknowledges the tensions that arise from this Order and the Tenth Circuit's controlling precedent. Nevertheless, the court is constrained by the plain language of 8 U.S.C. § 1252(a)(2)(B)(ii), which precludes district court judicial review. And while there may be issues with the review afforded by § 1252(a)(2)(D), it is available to Plaintiffs.

---

[114] 8 U.S.C. § 1252(b)(4)(A). Because USCIS is housed within the Department of Homeland Security and the Immigration Judge and BIA are housed within the Department of Justice, the record of USCIS's termination decision is not automatically included in "the administrative record on which the order of removal is based."

## CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss[115] is GRANTED. The clerk of court is directed to close the case.

SO ORDERED this 23rd day of May 2024.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[115] Dkt. 46.